NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ICHARTS LLC,**
*Plaintiff-Appellant*

**v.**

**TABLEAU SOFTWARE, LLC,**
*Defendant-Appellee*

---

2025-1302

---

Appeal from the United States District Court for the Northern District of California in No. 3:24-cv-03157-WHA, Judge William H. Alsup.

---

Decided:  August 10, 2026

---

WILLIAM R. HUBBARD, Womble Bond Dickinson (US) LLP, Baltimore, MD, argued for plaintiff-appellant.  Also represented by JULIE GIARDINA, BARRY J. HERMAN; CHRISTIAN E. MAMMEN, San Francisco, CA; FABIO E. MARINO, Sunnyvale, CA.

RYAN TYZ, Tyz Law Group PC, San Francisco, CA, argued for defendant-appellee.  Also represented by SEAN APPLE, ERIN JONES, CIARA N. MCHALE, UDIT SOOD.

---

Before MOORE, *Chief Judge*, LOURIE and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

iCharts LLC appeals the United States District Court for the Northern District of California's grant of Tableau Software, LLC's motion for judgment on the pleadings of patent ineligibility under 35 U.S.C. § 101. We affirm.

BACKGROUND

I.

Appellant iCharts LLC ("iCharts") owns U.S. Patent Nos. 8,271,892 ("'892 patent"), 8,520,000 ("'000 patent"), and 9,712,595 ("'595 patent") (collectively, the "Asserted Patents"). The '892 patent claims priority to a 2008 provisional application. J.A. 79, 1:7–9. The '000 and '595 patents claim priority to a 2008 provisional application and are continuations-in-part of the '892 patent. J.A. 146, 1:7–13; J.A. 213, 1:7–17. The Asserted Patents relate to systems and methods for creating, sharing, and embedding "interactive charts," which are charts that respond to user input, such as by zooming in on a portion of the chart, producing animations, or playing video/audio content. The Asserted Patents' specifications disclose an advance over pre-existing interactive charts: a "self-contained" interactive chart, which is a chart that retains its interactivity even when shared on a separate website. The Asserted Patents' specifications describe retaining interactivity using Adobe Flash technology:

> The interactive charts that are downloaded are self-contained flash files that can exist independent of the web portal. The user only requires Adobe Reader (containing Adobe flash player) to execute the code in the flash file. Any electronic document that can play flash can show the interactive charts.

J.A. 83, 10:7–11; J.A. 149, 8:47–51; J.A. 216, 8:60–65.

In the proceedings below, the district court treated claim 1 of each patent as representative. Claim 1 of the '892 patent recites:

1. A computer system comprising:

a data module configured to store data;

a chart template module configured to store chart templates;

a generation module configured to generate an interactive chart on a generation interface,

wherein the generation interface is configured to enable a user to generate the interactive chart from data stored in the data module and a template from the chart template module;

a sharing module configured to enable a user to publish or embed the interactive chart as a self-contained and independent electronic document,

wherein the self-contained and independent interactive chart, when opened in a program in the absence of the generation interface and the chart template module, enables a user to a) render the chart, b) obtain input from a user and c) rerender the chart using the input as a parameter thereby enabling the interactive chart to retain interactivity when published or embedded.

J.A. 87, 18:32–52.

Claim 1 of the '595 patent recites:

1. A system for creating interactive charts, the system comprising:

memory that stores a chart template;

a processor, wherein the processor executes instructions stored in the memory, causing the processor to:

generate a user interface on a first website,

receive chart data via the user interface,

receive a selection of the chart template via the user interface, and

generate an interactive chart including the chart data and the chart template; and

a network interface that, in response to generation of the interactive chart, transmits the interactive chart to a second website for display without the execution of the instructions stored in the memory to generate the user interface of the first website, wherein the second website receives an input from a second user and updates the interactive chart after the second website receives the input.

J.A. 221, 18:41–59.

Claim 1 of the '000 patent recites:

1. A computer-implemented method comprising:

receiving a selection, on a first website, of at least one interactive chart from a plurality of interactive charts; and

displaying, in response to the selection the at least one interactive chart embedded in a chart box on a second website, wherein the chart box is a web widget,

wherein the at least one interactive chart is generated on a generation interface configured to allow a user to generate the interactive chart with a chart template from a chart template store,

> wherein the at least one interactive chart, when displayed on the second website in the absence of the generation interface, enables a user to a) render the chart, b) obtain input from a user and c) rerender the chart using the input thereby enabling the interactive chart to retain interactivity,
>
> wherein the selection is made by dragging and dropping the at least one interactive chart from the plurality of charts into a chart box folder connected to the chart box such that retrieve code for data feed displays the at least one interactive chart on the first website, and
>
> wherein the at least one interactive chart is automatically displayed on the second website using a data feed from the first website to the second website upon the dragging and dropping selection.

J.A. 154, 18:24–49.

## II.

iCharts sued appellee Tableau Software, LLC ("Tableau") in the United States District Court for the Western District of Texas, alleging infringement of the Asserted Patents. The case was then transferred to the United States District Court for the Northern District of California.

Tableau thereafter moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c), arguing that the Asserted Patents were directed to patent ineligible subject matter under 35 U.S.C. § 101. The district court granted Tableau's motion.

At step 1 of the eligibility determination, the district court determined that the representative claims were directed to an abstract idea. For claim 1 of the '892 patent, the district court determined the abstract idea was "generating and sharing self-contained, interactive charts on computers." J.A. 8. For claims 1 of the '595 and

'000 patents, the district court determined that the abstract idea was "generating and sharing self-contained, interactive charts . . . across websites." J.A. 15; *see also* J.A. 19.

At step two, the district court determined that the representative claims of the Asserted Patents failed to recite an inventive concept. Additionally, the district court rejected iCharts' position that the inventive concept for claim 1 of the '892 patent was an unconventional use of Adobe Flash. *See* J.A. 13–14. The district court first stated that on the intrinsic record, no plausible inference could be drawn *except* that Adobe Flash was "a conventional tool conventionally applied." J.A. 13. The district court then stated that even assuming unconventionality, the claim language "does *not* limit this claim to using Adobe Flash or to *any* mechanism by which its ideas are accomplished." J.A. 14. Thus, according to the district court, because the claim failed to recite any mechanism to accomplish its desired result, such "failure [was] fatal" at step two. *Id.*

iCharts timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

This court reviews a district court's judgment on the pleadings under regional circuit law, here the Ninth Circuit. *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017). The Ninth Circuit reviews de novo an order granting a Rule 12(c) motion for judgment on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* Patent eligibility under § 101 is ultimately a question of law that may involve underlying factual findings. *Contour IP*

*Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1378 (Fed. Cir. 2024).

Section 101 of the Patent Act states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has determined that certain exceptions to the requirements of § 101 exist such that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). The patentability exception for abstract ideas, at issue in this case, embodies "the longstanding rule that [a]n idea of itself is not patentable." *Id.* at 218 (citation modified).

To determine whether patent claims are directed to patent ineligible subject matter, the Supreme Court has developed a two-step test commonly known as the "*Alice*" test. Under *Alice* step one, we consider whether the claims at issue are directed to, in this case, an abstract idea. *Id.* at 217. If the claims are not directed to an abstract idea, the *Alice* inquiry ends. *Id.* If we conclude that the claims are directed to patent ineligible subject matter, the inquiry continues to *Alice* step two, where we ask whether the claims recite something "significantly more" than the abstract idea itself. *Id.* at 217–18. Specifically, the court must determine "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (citation modified).

On appeal, iCharts generally argues the eligibility of the representative claims of the '892, '595, and '000 patents together. *See* Appellant Br. 14–43. For that reason, we

analyze the representative claims together unless otherwise noted.

## I.

At step one of *Alice*, iCharts argues that the representative claims of the Asserted Patents are non-abstract because they are directed towards an improvement in computer functionality, i.e., the creation of a "self-contained interactive chart." Appellant Br. 18–23. For the '892 patent, iCharts argues that this patent claims a "system that produces a 'self-contained and independent interactive chart' that allows the user to interact with the chart after it has been shared, such as through the Internet." Appellant Br. 21 (quoting J.A. 87, 18:46–47). For the '595 and '000 patents, iCharts argues that they "describe the creation of interactive charts using a web portal for publication and distribution on a second webpage." Appellant Br. 22. But even accepting iChart's position that the Asserted Patents are directed to the idea of generating a self-contained, interactive chart, this idea, as reflected in the representative claims of the Asserted Patents, is still abstract. As "reflected repeatedly in our cases," claims can be "abstract" under step one when they lack the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167–68 (Fed. Cir. 2018) (collecting cases). The claim itself "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020).

Here, the representative claims of the Asserted Patents recite a system or method for sharing a self-contained, interactive chart. Claim 1 of the '892 patent recites "a computer system comprising:" (1) "a data module configured to store data;" (2) "a chart template module configured to

store chart templates;" (3) "a generation module configured to generate an interactive chart on a generation interface," and (4) "a sharing module configured to enable a user to publish or embed the interactive chart as a self-contained and independent electronic document . . . ."    J.A. 87, 18:32–52.  Claims 1 of the '000 and '595 patents recite, respectively, a method and a system for sharing interactive charts from a first website to a second website. *See* J.A. 154, 18:24–49; J.A. 221, 18:41–59.   These charts can be independently "rerender[ed]" or "update[d]" on the second website without input from the first website.  J.A. 154, 18:34–40; J.A. 221, 18:52–59.  However, there is nothing in the representative claims showing *how* to "generate," "rerender," or "update" a self-contained, interactive chart. The claims are thus directed to "only a result" as opposed to a "way of achieving it."   *See SAP Am.*, 898 F.3d at 1167–68.  Accordingly, the representative claims of the Asserted Patents are directed to the underlying idea itself, i.e., generating and sharing self-contained, interactive charts on computers or across websites.

iCharts argues that "generating and sharing self-contained, interactive charts on computers" or "across websites" is an "extremely narrow and specific concept" that escapes abstractness at step one.  *See* Appellant Br. 33–34. The representative claims of the Asserted Patents, however, provide no meaningful limitation to the abstract idea. Instead, they merely limit the claims to a particular field of use, here "interactive charts."  Ideas are no less abstract when limited to a field of use. *See, e.g.*, *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (limiting abstract idea to XML documents "does little more than restrict the invention's field of use," which does "not render an otherwise abstract concept any less abstract").

In sum, we hold that the representative claims of the Asserted Patents are directed to an abstract idea of

"generating and sharing self-contained, interactive charts on computers" or "across websites."

## II.

Because the Asserted Patents are directed to an abstract idea, we proceed to step two of *Alice.* At step two, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 215, 218). Here, neither the recited components nor steps of the representative claims do anything more than implement the abstract idea of "generating and sharing self-contained charts on computers" or "across websites." We conclude that there are no elements in the representative claims, individually or as an ordered combination, that capture an inventive concept sufficient to transform the claims into eligible subject matter.

iCharts argues that the district court improperly resolved factual issues concerning the conventionality of Adobe Flash when granting Tableau's Rule 12(c) motion for judgment on the pleadings. Appellant Br. 37–39. Whether the district court resolved factual issues concerning Adobe Flash's conventionality is not outcome determinative here. The district court's step two analysis rests on an independent basis, which iCharts does not challenge on appeal. Here, the district court stated that "even surpassing plausibility to assume Adobe Flash was not conventionally used, the claim language [of claim 1 of the '892 patent] does *not* limit this claim to using Adobe Flash or to *any* mechanism by which its ideas are accomplished." J.A. 14. And like the district court correctly concluded, this failure by the claims was "fatal" to iChart's step-two position. *See id.* This is because "when a claim directed to an abstract idea contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described,

although this is stated to be the essential innovation[,] then the claim is not patent-eligible." *Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citation modified). Thus, because the district court's step two analysis is supported by this line of reasoning, we need not address whether the district court improperly resolved factual issues concerning the conventionality of Adobe Flash when granting Tableau's Rule 12(c) motion for judgment on the pleadings.

iCharts alternatively argues that the district court should have treated Tableau's Rule 12(c) motion for judgment on the pleadings as one for summary judgment because the district court relied on materials outside of the pleadings, specifically the parties' supplemental briefing requested by the district court. Appellant Br. 52–54. We disagree. The district court made clear that it rested its "*Alice* inquiry . . . [on] the claim language." J.A. 23–24. The Asserted Patents were attachments to the complaint. J.A. 25–222; J.A. 1333; J.A. 1337; J.A. 1340. Thus, the district court did not improperly look to information outside of the pleadings.

In sum, we conclude that at *Alice* step two, there is nothing in the representative claims of the Asserted Patents sufficient to transform them into eligible subject matter. The claims of the Asserted Patents are thus ineligible for patent and invalid.

## CONCLUSION

We have considered iCharts' remaining arguments and find them unpersuasive. For the reasons provided, we affirm.

## AFFIRMED